J-A12043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NANCY PETIT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHEL PETIT | : | No. 1577 EDA 2023 |

Appeal from the Order Entered May 25, 2023
In the Court of Common Pleas of Delaware County Domestic Relations at
No(s): 2016-00593,
PACSES; 821115830

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 21, 2024**

Plaintiff/Appellant Nancy Petit ("Mother") appeals from the May 25, 2023, order entered in the Court of Common Pleas of Delaware County granting in part and denying in part her Motion for Reconsideration and Modification of the trial court's April 26, 2023, child support and Alimony Pendente Lite ("APL") order.  For reasons that follow, we vacate and remand with instructions that the trial court recalculate child support and reconsider Father's ability to satisfy a portion of his support arrearages in a lump sum payment.

Appended to this decision is the trial court's Pa.R.A.P. 1925(a) Opinion dated September 26, 2023, which sets forth a detailed and comprehensive factual and procedural history, with references to the many evidentiary

_____

[*] Former Justice specially assigned to the Superior Court.

hearings held during the relevant period, such that we need only provide a summary thereof. Mother and Defendant/Appellee Michel Petit ("Father") were married in 2001, separated in 2015, and divorced in 2019. They are the biological parents of one minor child, born in 2013, who currently lives with Mother and her maternal grandmother in Delaware County, Pennsylvania. The record established that Father has joint legal custody of his son, but he has not seen or contacted him since 2018. N.T., 7/25/22, at 90-92.

Father is remarried and currently lives in Texas, where he is employed as a sales representative for a fracking sand supplier, Smart Sand, Inc., a publicly traded company doing business with oil and gas companies. From tax years 2016 to 2021, Appellant's earned income from Smart Sand fluctuated from a low of $123,349.37 in 2021 to a high of $294,093.41 in 2019, with a six-year average of approximately $196,790.00. N.T. at 46-48. In addition to his regular W-2 earnings, Father's compensation package included receipt of non-qualified Smart Sand restricted stock, which was reflected in his regular statement of earnings with income taxes withheld. N.T. at 107. As described, *infra*, the stock was restricted when issued, but pursuant to restrictive covenant agreement it became fully unrestricted within several years and was then capable of liquidation by Father. ***Id***.

Prior to Father's employment with Smart Sand, he played 17 seasons— from 1982 to 1998—as a professional hockey player in the National Hockey League ("NHL"). N.T., 12/3/20, at 8. Injuries he sustained during his playing years, however, made him eligible to file a workers' compensation claim and

to join a class-action concussion lawsuit against the NHL. He had retired from the NHL by the time he married Mother in 2001.

Since the birth of the parties' minor son, Mother has been a stay-at-home parent and serves as her son's sole caregiver. N.T., 3/4/21, at 31. Mother has not been employed in years, and she pays $1,500.00 in monthly rent to live with her son in the lower level of her maternal grandmother's home. N.T., 7/25/22, at 188.

On March 11, 2016, Mother filed a complaint for child support and APL against Father. On August 1, 2016, the parties appeared before a Hearing Officer, who issued a recommended order requiring Father to pay child support, APL, and the mortgage of the marital home for a total of $4,755.94 per month, effective March 11, 2016. TCO, 9/26/23, at 2. The Hearing Officer also found Father's income to be $9,326 per month and Mother's income to be $0. The Hearing Officer ordered Father to pay, *inter alia*, unreimbursed medical expenses and medical insurance. **Id**.

On August 16, 2016, Father filed a counseled notice of demand for a hearing *de novo*. On February 17, 2017, the trial court issued a Final Support Order in which it imputed an annual earning capacity for Mother of $24,900.00 and, pursuant to the parties' agreement, imputed a net monthly income of $8,395.75 to Father based on his Smart Sand income. **Id**. The court set Father's child support obligation according to child support guidelines. **Id**. On May 12, 2017, the trial court modified the support order in part upon consideration of Father's Amended Petition for Reconsideration. **Id.** at 3.

- 3 -

The current custody order was entered on December 11, 2018, based on a Hearing Officer's recommendation. Among other things, Mother was awarded primary physical custody subject to Father's supervised custodial visit with child at scheduled intervals. Both parents were awarded joint legal custody. On January 24, 2019, the parties entered into a property settlement agreement, upon which the trial court entered its February 28, 2019, equitable distribution order. The parties Divorce Decree was entered on April 2, 2019. *Id.* at 4-5.

As catalogued in the trial court opinion, the ensuing five years have involved numerous petitions for special relief and motions for modification of child support. TCO at 5-8. Among the issues raised and addressed at the corresponding proceedings were whether Father's workers' compensation award, concussion settlement, and other assets may be considered income imputed to Father if they were contemplated in the equitable distribution property settlement agreement, and whether Father was liable to pay retroactive child support for alleged misrepresentations about his income, when the parties had stipulated to his income. TCO at 7.

After conducting several *de novo* hearings and considering the parties' submitted Findings of Fact and Conclusions of Law, the trial court issued its decision and Final Support Order of January 13, 2023, in which it assessed significant arrearages based on its finding that Father had misrepresented his income at prior hearings. However, the court determined that it lacked any basis upon which to seize property pursuant to 23 Pa.C.S. § 3703(2)

(permitting the "taking and seizure of goods and chattel" to pay arrearages) and §4352(d.1) ( "overdue support obligations" may constitute a lien against real property) and order Father to pay a lump sum towards his arrears because it found Mother had not presented admissible evidence to establish the value of Father's assets which could be seized for such purposes. Once the value of such assets is obtained, the trial court indicated, Mother may take further enforcement action through Domestic Relations to satisfy the arrearages.

Mother filed a motion for reconsideration, to which the trial court granted reconsideration in part and denied in part through its orders of April 26, 2023, and May 25, 2023, respectively. This timely appeal follows.

Mother presents the following three questions for this Court's consideration:

1. Did the trial court err as a matter of law or abuse its discretion in computing Father's income for purposes of awarding child support where it failed to include Father's workers' compensation award, funds received from the NHL concussion litigation settlement, and the proceeds from a 401(k) withdrawal, where the record reveals that those funds were pre-marital or post-marital assets that were not included in the equitable distribution of the marital estate?

2. Did the trial court err as a matter of law or abuse its discretion in failing to include in its child support calculations the value of shares of stock in Father's employer, Smart Sand, a publicly owned company, where the record revealed that Father was paid in stock in lieu of salary to reduce his income available for child support?

3. Did the trial court abuse its discretion, when, after finding that Father had intentionally misrepresented his income and willfully violated a non-disbursement order, it failed to award Mother a lump-sum payment of child support and attorneys'

fees from Father's $158,400 workers compensation award or other assets but instead permitted Father to pay his $102,501 in child support, APL, and attorneys' fees out over many years?

Brief for Appellant, at 15-16.

Our standard of review is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa. Super. 2020) (citation omitted).

"[W]ith regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province ... and the court is free to choose to believe all, part, or none of the evidence presented." *Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations and internal quotation marks omitted), *appeal denied*, 995 A.2d 354 (Pa. 2010).

*Reich v. Reich*, 315 A.3d 89 (Pa. Super. 2024).

After careful review of the record, party briefs, the applicable law, we agree with the trial court that Mother's first claim on appeal is without merit. In reaching this conclusion, we rely on the trial court's Rule 1925(a) opinion, which provides a thorough review of the first issue and determines it is without merit. *See* TCO, 9/26/23, at 19-23 (Issue #5).

Specifically, the trial court correctly observed that the parties' counseled property settlement agreement of January 24, 2019, was reduced to writing and formed the basis for the trial court's equitable distribution order of February 28, 2019. The equitable distribution order provided, *inter alia*, that Mother receive the marital home valued at $699,000.00, after buying out Father's $50,000.00 interest therein, assume responsibility for the mortgage, taxes, utilities, and other expenses, and receive 25% of the increase in the value of Father's NHL pension. To Father, the equitable distribution order awarded him his full interest in the Sun Life Whole Insurance policy with responsibility for the loan balance, and "all right, title and interest" to his then-pending State of California worker's compensation claim, to his NHL pension as his sole and exclusive property, and to any settlement verdict, judgment or other disposition of funds awarded in the then-pending NHL class action concussion lawsuit.

Therefore, because Father's interests in question formed part of the consideration offered in the negotiations that led to an equitable distribution agreement between the parties, the trial court properly deemed those interests marital assets in its equitable distribution award and concluded, therefore, that they could not also be considered sources of "income" for child support purposes pursuant to 23 Pa.C.S. § 4302 lest the trial court engage in "double counting" of such assets. **See *Hess v. Hess***, 212 A.3d 520, 524 (Pa. Super. 2019) (holding an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support

- 7 -

payments). Because the trial court aptly identified controlling authority and applied it to the present facts, we discern no basis on which to grant Mother relief under her first claim.

In Mother's second issue, she maintains the trial court erroneously failed to impute to Father as income available for child support his employer's stock paid to him as compensation in *lieu* of cash wages.[1] At the April 2022 child support hearing, Father admitted he receives Smart Sand stock "every year" as compensation, N.T., 4/28/22, at 63, 64. He explained that part of his gross compensation in each of calendar year 2016, 2017, 2018, and 2019 typically consisted of a payment of 2000 shares of Smart Sand stock, N.T. at 62. He acknowledged the stocks were fully "restricted" at first but, by the time of the April 2022 hearing, all were "unrestricted." N.T. at 62, 64.

The trial court understood Father's testimony to describe a stock option compensation arrangement, whereby part of his compensation consisted of stocks that vested incrementally over time, at which point he acquired the right to exercise the option to buy or sell.[2] The trial court determined,

---

[1] Father testified at the April 28, 2022, hearing that "in every year" Smart Sand compensates him with a certain number of stocks, **see** *infra*, and he explained that Smart Sand sells the portion of the stock to acquire proceeds necessary to pay his withholding taxes and awards him the remaining 1,000 to 1,300 shares of the restricted stock, as net pay. N.T., 4/28/22, at 59, 64.

[2] The trial court understood Father's testimony to describe a "stock option" compensation arrangement, whereby part of his compensation package consisted of restricted stocks that became "unrestricted" or vested gradually over a predetermined time known as a vesting period. To the extent the trial
*(Footnote Continued Next Page)*

however, that Mother failed to produce evidence of either the stock options' values at the time of the hearing or of Father's ability to readily avail himself of their cash values to address his support obligations. We disagree.

Father, himself, testified that Smart Sand stock was, at the time of the April 2022 hearing, "trading at $3.00, and in those days [when he was initially compensated with the stock] it was $18, $19, $20 a share." N.T. at 65. To this testimony, Mother's counsel asked Father, "[D]o you agree it's around $3.86 a share currently?" Father replied, "Do I agree? I can look at it . . . or

_____

court understood the stock compensation award to confer to Father the option to *sell* stock that had reached unrestricted status and to receive cash payment equal to its then-current value, we concur with its understanding.

To the extent, however, that the trial court also concluded Father was required to exercise an option to *buy* the stock already awarded to him as compensation, **see** Trial Court "Findings of Fact and Conclusions of Law," 1/13/23, at p. 43, the record belies this conclusion. Documentary evidence and Father's testimony confirm the stock compensation arrangement between Smart Sand and Father was a "Restricted Stock Award" governed by a "Restrictive Covenant Agreement" in which the Smart Sand employee receives an award of restricted stock that vests or becomes unrestricted in one-quarter increments annually over four years. Under the terms of the Agreement, and consistent with Father's own testimony, all of Father's stock received from 2016 to 2019 had become fully unrestricted and available to him to cash out at his sole discretion—and without any further expense—by the time of the 2022 hearing, as Smart Sand already withheld income taxes applicable to the stocks prior to awarding them to Father as compensation. **See** Restricted Stock Award Agreement; N.T. at 59. The only option left for Father to exercise was whether and when to sell his unrestricted stock to access its value.

I can say, yeah, I agree." *Id*.[3] He also admitted, after initially offering a denial, that he had cashed out some of his Smart Sand stock in the past, N.T. at 63.[4]

Regardless of the diminution in the stocks' trading values over the relevant period[5], the record supports the conclusion that at the time of the hearing Father possessed approximately 4,800 post-withholding, unrestricted shares of company stock which, if sold at about $3.86 per share on the day of his testimony, would have held a net value of $18,528.00 in the aggregate.

In *MacKinley v. Messerschmidt*, 814 A.2d 680 (Pa. Super. 2002), this Court held that vested stock options constitute income for child support

---

[3] Father testified at the April 28, 2022, hearing that the stock had lost much of its value during the relevant time, but he did not deny Mother's counsel's assertion during examination that the stock had a then-present value of $3.86 per share. He also admitted, after initially offering a denial, that he had cashed out some of his Smart Sand stock in the past, N.T., 4/28/22, at 63, and that all his stock has reached unrestricted status. *Id*.

[4] The Restricted Stock Award Agreement further indicates that the four-year phase-in scheme by which an employee stock becomes increasingly unrestricted as long as one remains an employee is an incentive/award for remaining in the employ of Smart Sand. Under this record, which establishes that Father received this stock each year from 2016 through 2019, and remained an employee of Smart Sand at the time of the most recent hearing on April 10, 2023, it must be concluded that at the present time, all stocks issued to Father prior to July 2020 are fully unrestricted under the Restricted Stock Award Agreement's four-year phase-in scheme, and any other stocks awarded in the same manner in 2021, 2022, and 2023 are partially unrestricted.

[5] The trial court took note of Father's tax returns showing he experienced a net loss in the value of his stocks from 2016-2020, a fact that was acknowledged by both parties during the April 2022 hearing.

purposes regardless of when a parent elects to exercise them. The dispositive occasion in this context, *MacKinley* explains, is the moment a parent may access a stock's value, as the "dominant interest of a child's immediate needs, the recognition that children should not be made to wait for support, and the possibility of a parent deferring income until they choose to avail themselves of it" militate in favor of preventing such unilateral, voluntary, dilatory parental conduct aimed at reducing child support obligations. *Id.* at 683. *See Hanrahan v. Bakker*, 186 A.3d 958, 980 (Pa. 2018) (Applying policy considerations identified in *MacKinley* to reverse an order that awarded high-income parent a downward deviation in child support obligation after parent made considerable contributions to a trust benefitting children; money available to an obligor should be made available to children for their immediate needs).

The same rationale applies here to support the conclusion that Father's employment compensation in the form of restricted shares of stock—a method of compensation by which, Mother contends, Father sought to avoid child support obligations—constituted income for child support purposes once the shares became unrestricted and, thus, accessible to Father. Contrary to the trial court's opinion that Mother presented no evidence of the stocks' value, the record shows Mother established through both testimonial and documentary evidence that Father's Smart Sand stock awards had a discernable present value readily accessible to Father to apply towards his court-ordered obligations to his son. Accordingly, we conclude the trial court

- 11 -

erred in excluding Father's Smart Sand stock awards from its income calculations for purposes of setting Father's support obligations.

Because adding the aggregate value of all Father's unrestricted Smart Sand stocks will increase his imputed income to some degree, we remand this matter for proceedings wherein the trial court shall recalculate Father's income for purposes of determining Father's child support and APL obligations. Furthermore, in light of Father's access to unrestricted shares of stock, the trial court shall reconsider Mother's third issue pertaining to Father's ability to pay a portion of his $117,432.76 arrearages in a lump sum. In making the lump sum payment determination, the trial court shall consider not only the availability of his unrestricted stocks but also the unrefuted evidence that Father took no precautions for his son's sake to account for predictable fluctuations in his annual income by saving in high-income years and cashing out his stocks when they began to vest at higher prices several years ago and applying the proceeds to child support.

Order vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/21/2024

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
FAMILY AND JUVENILE

| | |
|---|---|
| NANCY PETIT, <br> Appellant | : SUPERIOR COURT No.: 1577 EDA 2023 <br> : <br> : |
| v. | : PACSES NO. 821115830 <br> : DOCKET NO. 2016-00593 |
| MICHEL PETIT, <br> Appellee | : <br> : IN SUPPORT |

Virginia Hinrichs McMichael, Esquire, Attorney for Plaintiff-Appellant
Michel Petit, Pro Se Defendant-Appellee

## OPINION

KLEIN, J.                                                    Filed: September 26, 2023

### I.    PRELIMINARY STATEMENT

In this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court hereby incorporates its Findings of Fact and Conclusions of Law and Final Support Order issued on January 13, 2023, its Reconsideration decision issued on April 26, 2023 and its second Reconsideration decision issued on May 25, 2023. The court attaches these decisions and orders to this Opinion and relies on them to explain its rationale for its decisions.

Below please find the court's analyses of the errors raised in Plaintiff Nancy Petit's ("Mother") Rule 1925(b) Concise Statement of Errors *seriatim*. For the reasons stated below, the trial court contends that its decisions fail to constitute an abuse of discretion or an error of law and respectfully requests that its decisions be affirmed.

### II.    PROCEDURAL HISTORY

The trial court hereby reproduces its Procedural History within its Findings of Fact as contained in its January 13, 2023 Findings of Fact and Conclusions of Law at pp. 1-13 ("January 13, 2023 Decision"):

1

1. Plaintiff Nancy Petit ("Mother" or "Wife") and Defendant Michel Petit ("Father" or "Husband") are the biological parents of the minor child, B.P., DOB 2/22/13 ("child" or "minor child").

2. Plaintiff Nancy Petit initially filed her complaints for child support and alimony pendente lite ("APL") on March 11, 2016. Domestic Relations Case Note Report, 3/17/16 at 56.

3. The parties appeared before Hearing Officer Donnelly on August 1, 2016 who issued a recommended order requiring Defendant Michel Petit to pay child support, APL and the mortgage on the marital home for a total of $4,755.94 per month; the effective date of the Order was March 11, 2016. Domestic Relations Docket History Report at 25.

4. The Hearing Officer also found Defendant's income to be $9,326 per month and Plaintiff's, zero. Her Order included apportionment of unreimbursed medical expenses, various credits and that Defendant was to provide medical insurance. *Id.*

5. On August 16, 2016, Defendant filed a notice of demand for hearing *de novo* through his counsel, Frank Urso, Esquire. Domestic Relations Docket History Report at 24.

6. On February 17, 2017, Honorable Domenic Pileggi issued a Final Support Order, after taking this matter under advisement on December 12, 2016. Exhibit P-15. He found the following:

    a. He imputed an earning capacity for Mother of $24,900 for a net monthly income of $1,794.02. *Id.* at 5, ¶27.

    b. Parties agreed that Father's employment, at that time, yielded a net monthly income of $8,395.75. The parties also stipulated that Father worked in sales for Smart Sand, Inc. *Id.* at 2, ¶10.

    c. Pursuant to child support guidelines in effect at the time, Judge Pileggi found that basic child support for one child with a net monthly household income of $10,189.77 is $1,410.00 per month. Father's share of the net monthly household income was 82% while Mother's was 18%. As a result, Father's basic monthly child support obligation was $1,156.20. *Id.*, at 7, ¶28.

    d. Judge Pileggi further analyzed Mother's request for an upward custody deviation and found in her favor in light of Father's failure to avail himself of court-ordered parenting time. He awarded a 10% upward custody deviation in the amount of $115.62. *Id.*, at 8, ¶29.

    e. Next, Judge Pileggi tackled daycare expenses as required when imputing income. He found that Mother's yearly imputed cost of daycare at $250 per week would be $13,000 annually or $1,083.33 per month. As Father's share is 82%, his responsibility would be $888.33 per month. *Id.* at 10-11, ¶30.

    f. Judge Pileggi then found that Father's health insurance costs were $268.66 per month. Mother's share was 18%, or $48.36, which Judge Pileggi subtracted from Father's support obligation. *Id.* at 11, ¶31.

g. He then calculated Mother's alimony pendente lite award as $1,346.98. *Id.* at 11, ¶32.

h. He awarded Mother an upward mortgage deviation, based on the parties' monthly mortgage of $2,085.77, in the amount of $386.29. *Id.* at 11-12, ¶33.

i. Based on the above findings, he concluded that Father's monthly alimony pendente lite and child support obligations towards Mother were $3,845.06 plus 10% on arrears, $384.00 per month, for a total of $4,229.06. *Id.* at 14-16, ¶ 36.

j. Last, he ordered Mother be responsible for the first $250 of unreimbursed medical expenses for Mother and minor child, the excess to be split 50/50. He failed to mention any award of extra-curricular expenses. *Id.* at 14-15, ¶¶ 37-38.

7. Upon consideration of Defendant's Amended Petition for Reconsideration, Plaintiff's Answer thereto and a hearing on May 12, 2017, Judge Pileggi modified his February 17, 2017 Order in part. Exhibit P-7. He found the following:

a. He affirmed his prior decision to award an upward custody deviation of 10%. *Id.* at 3, ¶ 2.j.

b. He affirmed his decision to award Mother reasonable imputed childcare costs at the previous amount awarded. *Id.* at 4, ¶ 3.

c. He modified the March 31, 2020 decision to reflect Mother's entitlement to a child and tax dependent care credit in the amount of $900. *Id.* at 4, ¶ 4.

d. He affirmed Father's agreed net monthly income as $8,395.75. *Id.* at 4, ¶ 5.

e. He found that Mother's gross imputed yearly income at the same amount, $24,960, but deducted childcare tax credit, Medicare and Pennsylvania income tax and Social Security taxes to yield an annual net income of $23,284.29, with a monthly net of $1,940.36. He found that Mother had no federal tax liability. *Id.* at 5-6, ¶ 5.

f. Based on his modified calculations for Mother's income, he found that net monthly total household income was $10,336.11, resulting in a monthly award of $1,423.00 in child support for one child. Father was apportioned 81% of the net household income while Mother, 19%. *Id.* at 6, ¶ 9.

g. He found the upward custody deviation to be $115.00 per month. *Id.* at 7, ¶ 10.

h. Mother's childcare expenses were not modified, but Judge Pileggi subtracted the $900 childcare tax credit, resulting in $12,100 from $13,000 as stated in the February Order. *Id.* at 8, ¶ 11. The net monthly childcare was modified to be $1,083.33 per month. When multiplied by 81%, Father's share is $816.74 net per month. *Id.* at 8, ¶ 11.

3

    i.  Based on the Court's modification of Mother's income, the Court adjusted Mother's contribution to health insurance accordingly. Her new contribution was $51.05, to be subtracted from Father's support and APL obligation. *Id.* at 8-9, ¶ 11.

    j.  Similarly, based on the Court's modification of Mother's income, the Court adjusted Mother's alimony pendente lite award, resulting in Father's monthly alimony pendente lite obligation to be $1,326.62. *Id.* at 9-10, ¶ 13.

    k.  Again, based on the Court's modification of Mother's income, the Court changed the mortgage deviation to $380.35. *Id.* at 9-10, ¶ 13.

    l.  Calculating the child support and alimony pendente lite awards with custody and mortgage deviations, childcare expenses and health insurance as stated above, the Court concluded that Father's total monthly obligation, inclusive of child support and alimony pendente lite, was $3,740.29 plus 10% in arrears or $374.00. *Id.*, Order at 12-13, ¶ 4.

    m.  Unreimbursed medical expenses for both Mother and child remained the same: Mother was responsible for the first $250, with parties splitting unreimbursed medical expenses. *Id.*, Order at 12-13, ¶ 5-6.

8. Mother filed a Petition to Modify Support on or about August 6, 2018. Case Note Report at 39. The matter was heard before Hearing Officer Bonner who took this matter under advisement on September 12, 2018. Domestic Relations Docket at 15.

9. On September 12, 2018, at a proceeding on contempt before Honorable Ann Osborne, the Court asked that Domestic Relations re-list the matter to review medical documents submitted that morning. She held the contempt proceeding in abeyance. Domestic Relations Docket at 16.

10. On October 12, 2018, Hearing Officer Bonner dismissed Mother's Petition, finding credible Father's testimony that Mother had failed to present any substantial change in circumstances. Domestic Relations Docket History Report at 15.

11. On October 23, 2018, Mother filed a Demand for Hearing *de novo*. Domestic Relations Docket History Report at 14.

12. The current Custody Order was entered on December 11, 2018 based on a hearing officer's recommendation. Mother was awarded primary physical custody subject to Father's supervised custodial visit with child every three months on a Saturday for eight hours with at least seven days' notice to Mother in writing. Both parents were awarded joint legal custody. 7/25/22 hearing, Exhibit P-19.

13. On April 8, 2019, Domestic Relations received a copy of the parties' Divorce Decree entered on or about April 2, 2019. The equitable distribution order issued by Honorable Domenic Pileggi, based on an agreement entered on the record on January 24, 2019 after both parties were subjected to a full

colloquy, was issued on February 28, 2019.[1] E.D. Order. Case Note Report at 31.

14. On August 7, 2019, Domestic Relations received a copy of parties' "PSA"[2] stating that Mother was to receive "rehabilitative alimony" effective February 19, 2019 to July 2020, eighteen consecutive months. *Id.* at 29.

15. After several continuances, Judge Pileggi heard Mother's *de novo* appeal on July 9, 2019. Upon request, on July 11, 2019, Judge Pileggi ordered Mother's Motion to Compel and her *de novo* appeal be held in abeyance. He further ordered that the matter could be relisted upon request. Domestic Relations Docket History at 16.

16. Subsequently, Father filed a Petition for Modification in 2019.[3] On September 23, 2020, Hearing Officer Bonner dismissed his Petition for Modification because Mother's *de novo* Appeal and Motion to Compel heard on July 9, 2019 were still pending. Docket History Report at 29.

17. On October 29, 2020, Domestic Relations received a request to relist the Demand for Hearing *De Novo* held in abeyance by Judge Pileggi from July 9, 2019. The matter was listed before this Court on December 3, 2020. Domestic Relations Case Note Report at 23.

18. On December 3, 2020, this Court held the *de novo* appeal in abeyance and ordered that Defendant's child support obligation be offset against his $3,000 credit. The matter was rescheduled for March 4, 2021. Docket History Report at 9.

19. On March 4, 2021, this Court entered a comprehensive graduated interim order, ordering the *de novo* appeal to be held in abeyance and that this matter be specially listed. The interim order provided:

   a. On an interim basis, effective January 1, 2020, the Court ordered child support awarded for one child at $1,239 per month plus $123 in arrears. In addition, the Court ordered that responsibility for unreimbursed medical expenses were to be split in the following way: Father, 86%, Mother, 14%. The Court based this finding on Mother's net monthly income as $1,358.68 and Father's as $8,573, the same income from Judge Pileggi's 2017 decisions.

---

[1] After reviewing the record, the Court noted that the Divorce Decree and February 28, 2019 equitable distribution Order were not made part of the record in this *de novo* appeal. The Divorce Decree was docketed on April 2, 2019. The attached final support Order shall order re-opening of the record and submitting these documents which are part of the court docket at the Delaware County Court of Common Pleas' to be incorporated as part of the Domestic Relations docket. As the Court will explain above, this Order is not only crucial to calculate Mother's alimony pendente lite and her alimony award, the Order is also crucial to address parties' arguments about the inclusion or exclusion of various settlements and the proceeds of a life insurance policy.

[2] On February 28, 2019, the Court, per Pileggi, J., issued an Order based on the equitable distribution agreement by both parties, by and through counsel, placed on the record on January 24, 2019 after an "extensive colloquy" of all parties. As a result, the Court had entered an agreed order, not approved a property settlement agreement or PSA. The Domestic Relations notation therefore appears in error.

[3] Domestic Relations Docket History fails to indicate the filing date of his Petition for Modification. *See* Docket History Report at 11.

5

b. Effective 1/1/19-1/31/19, the Court ordered $1,587 in child support and $2,734 in APL, for a total of $4,321 per month with $432 in arrears. The Court further found that Plaintiff's net monthly income was $1,368, and Defendant's net monthly income was $12,579, unreimbursed medical expenses to be shared at Defendant 90%, Plaintiff 10%.

c. Effective 12/1/19-12/31/19, base child support for one child was $1,586 and alimony was $1,000, for total support of $2,587 with $258 in arrears. The Court further found Mother's net month income to be $1,368.68 and Father's to be $12,579.50. Unreimbursed medical expenses were to be split Father 90%, Mother 10%. The Court ordered Office of Support Enforcement ("OSE") or the Domestic Relations Office ("DRO") to provide Mother's receipts to Defendant for unreimbursed medical expenses and extra-curricular activities for the years that she had filed: 2018, 2019 and 2020. Defendant was to provide documentation of the $22,000 he received from the NHL for hockey cards. Docket History Report at 6-8.

20. On April 23, 2021, this Court denied Plaintiff's Motion for Reconsideration of its Interim Order without prejudice and scheduled a hearing for Thursday, May 13, 2021 at 1:30 p.m. It further marked the hearing "Must be Tried." Docket History Report at 4.

21. On April 23, 2021, the Court granted Plaintiff's Petition for Production of Documents and denied Plaintiff's Motion for Modification of Child Support, as an appeal was pending.

22. The May 13, 2021 hearing was continued until July 21, 2021. In addition, on June 28, 2021, upon consideration of Plaintiff's Amended Emergency Petition for Special Relief, the Court ordered that it be heard with the continued hearing for Plaintiff's Request for Discovery and her Request for *De Novo* Hearing.

23. On July 22, 2021, the Court entered another interim order pending parties' submission of additional documentation. To account for receipt of his workers' compensation award, the Court ordered Defendant to escrow $50,000 for future child support by August 22, 2021.

24. On October 25, 2021, the Court ordered Defendant to produce a copy of his 1040 income tax returns, and all accompanying schedules and attachments, for tax years 2016 and 2017 no later than November 2, 2021. On October 29, 2021, the Court issued a pre-hearing conference order.

25. On November 3, 2021, the Court issued another pre-hearing order summarizing the current posture of the case and outlining the outstanding legal issues. The Court ordered that parties provide custody orders in effect between March 2016 and the present and proposed support guideline calculations for calendar years 2016 through the present with two calculations for 2019, before and after the Divorce Decree, utilizing figures from Defendant's income tax returns.

26. The Court also instructed Mother to provide guidelines detailing the discrepancy between income figures previously provided to the Court and the guidelines she believes are correct based on the tax returns. Documents were to be exchanged no later than November 17, 2021, with a Microsoft Teams conference to be held on November 23, 2021.

27. However, the Court was unable to schedule the hearing, as Court Administration had not yet released the court schedule for January to June 2022.

28. On January 26, 2022, the Court issued a second pre-hearing conference order outlining matters discussed at the pre-hearing conference on January 12, 2022. This order required further exchange of documents, most notably a copy of the 1040 tax returns with signatures or electronic signatures and 2021 W-2s and 1099s.

29. The Court also ordered that parties submit memoranda with points and authorities on various points of law, including whether the workers' compensation award and concussion settlement may be considered income if they were part of the equitable distribution property settlement agreement; whether Mother may seek retroactive child support and alimony pendente lite from the date of her 2016 petitions if the Court finds misrepresentation by Defendant, even if parties had stipulated to his income; and whether the Court may still consider Mother's submissions for extra-curricular and unreimbursed medical expenses from 2016 to present. The Court ordered parties to submit evidence and argument regarding any custody deviations at the upcoming hearing and ordered Mother to submit a list of her efforts to find employment within the past six months no later than thirty days before the next hearing. Last, the Court ordered that any efforts to escrow Defendant's workers' compensation be held in abeyance until further order of court.

30. On February 9, 2022, the Court issued an Order to Appear for the final *de novo* support hearing on April 28, 2022.

31. On February 10, 2022, Plaintiff filed an Amended Motion for Reconsideration. After reviewing responses from counsel, the Court issued an Interim Order on March 8, 2022. Upon consideration of Plaintiff's outstanding discovery requests, Defendant's objections, Plaintiff's Emergency Motion for Reconsideration and her Emergency Motion for Contempt, the Court ordered:

   a. It denied Plaintiff's Emergency Petition for Contempt.
   b. It noted parties' submissions of points and authorities and also noted that it will entertain arguments, as well as testimony, and introduction of evidence at the support hearing on April 28, 2022.
   c. The Court granted in part and denied in part Plaintiff's request for reconsideration. The Court required Father to sign authorizations for his tax returns for tax years 2016-2020, along with schedules and documents attached, i.e., W-2's and 1099's. Defendant was also required to provide the same for his 2021 tax return. Plaintiff was directed to file a motion to compel.

7

32. On March 18, 2022, parties entered into a stipulation in which they agreed that the March 4, 2021 Interim Order inadvertently excluded Defendant's alimony obligation of $1,000 per month, to be paid from January 2020 through July 2020, consistent with the parties' February 28, 2019 equitable distribution order. They agreed that the amount due in 2020 shall be increased by $7,000 to account for this inadvertent error.

33. On April 28, 2022, the Court convened the hearing *de novo* and was unable to complete the hearing after almost a full trial day, as the Court had another matter scheduled at the end of the day. Since Defendant was in the midst of testifying in Plaintiff's case "as on cross," the Court issued an Order holding the record open to complete the hearing and to submit updated guidelines to be introduced as D-3 and P-14. Last, the Court ordered that Father was prohibited from communicating with counsel about his testimony until completion of his testimony "as on cross."

34. On May 16, 2022, the Court issued a third pre-hearing order. The matter was scheduled for August 5th at 9:30 a.m. and allotted five hours for the hearing. The lengthy continuance was given to allow Plaintiff's counsel to obtain copies of Defendant's tax returns from the IRS and to accommodate parties' and counsels' schedules. The Court closed discovery as of April 28, 2022, except for the abovementioned tax returns, and issued further pre-hearing instructions.

35. On June 16, 2022, due to the unavailability of one of the counsel or parties, the Court rescheduled the support hearing for July 25, 2022.

36. At the conclusion of an additional six hours of hearing on July 25, 2022, the Court issued a post-hearing order, granting the parties the opportunity to submit proposed Findings of Fact and Conclusion of Law in lieu of closing arguments. In addition, the Court held the record open only for Mother to submit copies of Father's federal income tax returns and accompanying schedules, if any, that she had requested from the Internal Revenue Service months before.

37. These Findings of Fact and Conclusions of Law were due on or before September 12, 2022. However, via email to chambers, parties requested an additional week, and the Court granted their request.

38. Parties filed their Findings of Fact and Conclusions of Law with Domestic Relations on September 19, 2022. In addition, Mother filed copies of Father's executed 2016-2021 federal tax returns received from the Internal Revenue Service.

January 13, 2023 Decision at 1-13.

Upon consideration of the parties' submitted Findings of Fact and Conclusions of Law and all the evidence presented at the *de novo* hearings on April 28, 2022 and July 25, 2022, the trial court issued its January 13, 2023 Decision.

8

Subsequently, on February 10, 2023, the court granted Plaintiff's Motion for Reconsideration and scheduled a hearing on March 16, 2023 to hear legal argument on her Motion for Reconsideration and Defendant's response.

On February 24, 2023, Defendant's counsel, Aaron Weems, Esquire, and his firm, Fox Rothschild, LLP, were granted leave to withdraw as counsel. Defendant entered his appearance *pro se*. To date, no other counsel has entered their appearance for Defendant.

Plaintiff appeared on March 16, 2023 at the appointed time with her counsel, Rebecca Kolsky, Esquire. Defendant failed to appear. In addition, the Court noted Defendant's residence in Texas and that he had failed to file a motion to obtain the court's permission to participate remotely by telephone.

After waiting a few minutes for Defendant to call or appear, the trial court asked that the Domestic Relations clerk telephone Defendant. After reaching Defendant on the telephone and placing him under oath, Defendant testified that he had received no notice of the hearing. Over strenuous objection from Plaintiff's counsel, the trial court continued the hearing until April 10, 2023 and granted Defendant permission to participate via telephone.

On March 17, 2023, the trial court issued an Order summarizing the March 16, 2023 proceedings, ordering both parties to appear on April 10, 2023 at 9:00 a.m. EDT/EST and ordering both Domestic Relations and the court's chambers to send notices to both parties. The trial court also ordered that retention of new counsel and their unavailability shall not constitute a basis for continuance and that continuances would be granted only in case of emergency. The court also permitted Defendant to appear remotely. Last, the court granted Defendant the opportunity to write a response to Plaintiff's Motion.

9

The hearing occurred on April 10, 2023. Plaintiff appeared in person with her counsel and Defendant participated *pro se* via telephone. After hearing argument from both parties, the court took the matter under advisement.

On April 26, 2023, the trial court issued an eleven page Order Granting Plaintiff's Motion in Part and Denying Her Motion in Part ("Reconsideration Order").

On May 17, 2023, Plaintiff filed an additional Motion to Reconsider the court's decision of April 26, 2023. The court issued an Order ("Second Reconsideration Order") on May 25, 2023, granting her Motion, further modifying its previous Orders and January 13, 2023 Decision.

Defendant filed three Notices of Appeal that correlate with the trial court's three decisions: 1562 EDA 2023, 1563 EDA 2023 and 1616 EDA 2023. The 1562 EDA 2023 and 1563 EDA 2023 appeals were filed on May 26, 2023, and the 1616 EDA 2023 appeal was filed on June 21, 2023. Moreover, Plaintiff filed four Notices of Appeal on or about May 26, 2023: 1574 EDA 2023, 1575 EDA 2023, 1576 EDA 2023 and 1577 EDA 2023.

On June 23, 2023, the court issued an Order requiring that Plaintiff file a Concise Statement of Errors Complained of On Appeal pursuant to Pa. R.App.P. 1925(b) within twenty-one (21) days of the date of the Order for the following appeals: 1574 EDA 2023, 1575 EDA 2023, 1576 EDA 2023, and 1577 EDA 2023. Also, on June 23, 2023, the court issued an Order requiring that Defendant file a Rule Pa.R.App.P. 1925(b) Statement within twenty-one (21) days of the date of the Order for the following appeals: 1562 EDA 2023 and 1563 EDA 2023. Finally, on July 5, 2023, the court issued an Order requiring Defendant to file a Rule Pa.R.App.P. 1925(b) Statement within twenty-one (21) days of the entry of the Order in appeal 1616 EDA 2023.

10

On July 5, 2023, Plaintiff's new counsel, Virginia Hinrichs McMichael, Esquire, filed an Application for Extension of Time to File Rule 1925(b) Concise Statement of Errors, alleging that she was just hired, had not been previously involved in these matters and required additional time to review the voluminous record in this matter. On July 14, 2023, the court granted her request and extended the deadline in which to file Plaintiff's Concise Statement of Errors until July 26, 2023.

Defendant's Concise Statements for 1562 EDA 2023 and 1563 EDA 2023 were due July 14, 2023. His Concise Statement for 1616 EDA 2023 was due on July 25, 2023. To date, Defendant failed to file his Concise Statement of Errors in any of his appeals. On July 25, 2023, Plaintiff filed her Rule 1925(b) Concise Statement of Errors.

The Superior Court docket shows that currently only one appeal is active: Plaintiff's 1577 EDA 2023 appeal. The 1574 EDA 2023, 1575 EDA 2023 and 1576 EDA 2023 appeals were discontinued on July 28, 2023.

On August 10, 2023, the Superior Court quashed Defendant's 1562 EDA 2023 appeal because of Defendant's failure to respond to the Superior Court's Order to Show Cause issued on July 18, 2023. Similarly, on August 11, 2023, the Superior Court quashed Defendant's 1563 EDA 2023 appeal because of Defendant's failure to respond to the Superior Court's Order to Show Cause issued on July 24, 2023. On August 24, 2023, the Superior Court dismissed Defendant's 1616 EDA 2023 appeal because of Defendant's failure to respond to the Superior Court's Order to Show Cause issued on August 8, 2023. Thus, all of Defendant's appeals to Superior Court have been dismissed.

Plaintiff's 1577 EDA 2023 appeal is the only outstanding appeal in this matter and the trial court will address the issues raised in Plaintiff's Rule 1925(b) Concise Statement below.

11

## III. DISCUSSION

### A. Standard of review

It is axiomatic that the appellate courts will uphold a support order absent an abuse of discretion. *Colonna v. Colonna*, 581 Pa. 1, 855 A.2d 648, 641 (Pa. 2004) (citing *Ball v. Minnick*, 538 Pa. 441, 648 A.2d 1192 (Pa. 1994)). Abuse of discretion has been defined as "not merely an error of judgment, but if reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence of record..." *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628, 631 (Pa.1992) (citation omitted). *Accord J.P.D. v. W.E.D.*, 2015 Pa. Super. 108, 114 A.3d 887, 889 (Pa. Super. 2015).

This court respectfully contends that it failed to abuse its discretion or erred as a matter of law. In addition, it respectfully contends that its exercise of judgment was reasonable and devoid of partiality, prejudice, bias or ill will. For the reasons stated below and the reasons stated in its three decisions incorporated in this 1925(a) Opinion, this court respectfully requests that its decisions be affirmed for the reasons stated below.

### B. Plaintiff's Statement of Errors Complained of On Appeal

**1. Mother's invocation of the doctrine of unclean hands and its citation as an error or abuse of discretion is inapposite to the case at hand and therefore should not be dismissed by the appellate court.**

Mother's first claimed error states:

The trial court erred as matter of law or abused its discretion in failing to apply the doctrine of unclean hands after finding that Defendant Michel Petit ("Father") intentionally misled the court by making multiple false statements under oath regarding

12

his income, assets and the settlement of two lawsuits: a (sic) NHL Concussion lawsuit and a Worker's Compensation lawsuit. The record reveals that, before the hearing the NHL Concussion lawsuit had also settled and the proceeds paid to Father; the Worker's Compensation lawsuit had also settled and a compromise and release had been executed. But Father, testifying under oath, denied the existence of both lawsuits and his receipt of settlement funds.

Mother's reliance on this error is mistaken.

The Pennsylvania Supreme Court has held that "[a] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Terraciano v. Com., Dept. of Transportation, Bureau of Driver Licensing*, 753 A.2d 233, 237 (Pa. 2000) (quoting *Shapiro v. Shapiro*, 204 A.2d 266, 268 (Pa. 1964)). Further, *Terraciano* holds that "[t]he doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue. *Id.* at 238 (citing *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098, 1103 (1998)). Thus, the unclean hands doctrine is invoked to deny a party equitable relief upon a showing of fraud or deceit in the transaction at issue. This argument is inapposite to this matter on several grounds.

First, Plaintiff sought no relief in equity. The case at hand is a child support and APL appeal based solely on the statutory scheme established in 23 Pa.C.S. § 4301 *et seq.*, the child and spousal support statutes, and 23 Pa.C.S.§ 3702, the APL statute. In this matter, Appellant was neither entitled to equitable relief nor did she seek it. Therefore, the trial court contends that this doctrine is inapplicable to the instant case.

Second, Appellant's statement of error is vague and difficult to understand. She fails to state what error the trial court had committed and what relief the court failed to award her. On the contrary, the trial court granted Mother's requested relief in finding that Father had misrepresented his income to the court and had failed to report changes in his income as required

13

by statues, rules of procedure and caselaw. This finding resulted in arrears in excess of $100,000. *See* January 13, 2023 Decision at 17-18. Mother's assessment of error fails to clearly state what equitable relief she sought that the trial court had failed to grant.

A Concise Statement must "specify the error to be addressed on appeal." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (citation omitted). The appellate court may find a waiver of an appellate issue or issues where the filed concise statement is too vague. *See Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001); *see also Lineberg v. Wyeth*, 849, A.2d 141, 148-49 (Pa. Super. 2006) (a trial court should not be required to guess what issues appellant is raising on appeal).

Because the doctrine of unclean hands is inapplicable and the issue as framed by Mother is too vague, the Superior Court should deny Mother relief on this ground or decline to address this issue.

## 2. Mother Failed to Establish the Existence of Any Assets or Their Value for the Trial Court to Order a Lump Sum Payment.

Mother's second issue states:

The trial court erred as a matter of law or abused its discretion in refusing to require Father to pay arrearages for child support, APL, alimony, and attorney's fees in a lump sum rather than in monthly payments, where, among other things, Father has substantial resources; Father intentionally misstated and underreported his income for many years and lied under oath about his finances; Father violated court orders by refusing to produce documents verifying his income; the minor child is entitled to many more years of child support; and Father is 59-years-old and in ill health.

Mother's statement of this issue is rambling and is anything but concise. However, as the trial court understands this issue, Mother contends that it erred in failing to order Father to pay a

14

lump sum to satisfy his arrearages for child support, APL and attorney's fees.[4] However, as the trial court explained in its April 26, 2023 Reconsideration Order, Mother failed to identify any assets from which Father could tender a lump sum payment in excess of $100,000. Reconsideration Order at 3-5, ¶¶ 2.g-s.

Mother correctly asserts that the trial court found that Father lied about his income. This ultimately led to his arrearages assessed as a result of the calculations contained in the Final Support Order issued on January 13, 2023.

Moreover, 23 Pa.C.S. § 3703(2) permits, after hearing, the "taking and seizure of goods and chattel" to pay arrearages. *See also* 23 Pa.C.S. § 4352(d.1) ("overdue support obligations" may constitute a lien against real property).

However, in the absence of any admissible evidence to establish the value of Father's assets, the court lacked any basis to order Father to pay a lump sum towards his arrears. The sole information that the trial court and Domestic Relations currently possess demonstrates that Father has a W-2 job for which his wages are attached and through which the monthly support order has been satisfied plus a 30% payments towards arrears, as provided in the court's Reconsideration Order at 5-6.

Indeed, the trial court noted in its Reconsideration Order, that as the matter has already been designated complex, Mother may file a motion or petition requesting the court to order Father to produce verification of the value of his assets. Reconsideration Order, 4/26/23 at

---

[4] Counsel mistakenly asserts that Father has arrearages for alimony. Judge Pileggi ordered that Father pay Mother "rehabilitative alimony" for eighteen months commencing February 2019. Findings of Facts at ¶ 14 at 5. Father's wages have always been attached and he has never been in default of his court-ordered child support, alimony and APL payments until the implementation of this trial court's January 13, 2023 Decision and accompanying Final Support Order. *See* Domestic Relations Case Financial Summary. This reflects that Father paid the monthly support order on time every month via a wage attachment. Therefore, the Domestic Relations record reflects no delinquency of monthly child support or any arrearages. On the contrary, Father had a credit which often totaled in the thousands.

15

¶ 7.I.q. Once the value of these assets is ascertained, Mother may take further enforcement action through Domestic Relations to satisfy the arrearages.

Therefore, Mother's assertion of error is misguided and the trial court respectfully requests that its decisions be affirmed.

### 3. The Trial Court Did Not Abuse Its Discretion When It Declined to Escrow Father's Funds Because He Was Current on All Child Support Payments

In her Concise Statement, Mother asserts in her third issue:

The trial court erred as a matter of law or abused its discretion when it refused to order Father to escrow funds, including but not limited to his workers' compensation award and pension, for the payment of child support and other arrearages.

Mother's reliance on this issue is misplaced. The Case Financial Summary from at least December 16, 2020 until January 13, 2023, when the trial court issued its order which resulted in Father's arrearages had reflected a consistent credit in child support and APL, not any arrearage.

Similarly, the Case Financial Summary reflects that Father paid the monthly support order on time every month via a wage attachment. Therefore, the Domestic Relations record reflects no delinquency of monthly child support or any arrearages at the time Mother sought to escrow Father's workers' compensation award. On the contrary, Father had maintained a credit which often totaled in the thousands. Father only accrued arrearages for back child support and APL after the trial court issued its January 13, 2023 Decision.

23 Pa C.S. § 4305(b)(10) (ii) authorizes Domestic Relations agencies to "[i]ssue orders where there is a support arrearage to secure assets to satisfy current support obligation and the arrearage by... Intercepting or seizing judgments or settlements."

Accordingly, since Father maintained a credit in his child support and APL Domestic Relations ledger, had no arrearages and he timely paid his monthly child support order every month, Domestic Relations lacked the authority to seize Father's workers' compensation

16

payments in 2021 until Father accrued arrearages when this court's January 13, 2023 Decision and Final Support Order were implemented by Domestic Relations. 23 Pa C.S. § 4305(b)(10). At the time Mother sought that his award be escrowed, discovery was outstanding and the final support appeal hearings had not occurred in 2022. As a result, Father's account reflected no arrearages and Father owed Mother no money other than his monthly child support and APL order which was paid in full every month via wage attachment. Therefore, Domestic Relations and this court lacked any authority to order that Father's workers' compensation award be seized and escrowed.

Moreover, Mother asserts that the court abused its discretion in failing to order that Father's "pension" be escrowed. Indeed, throughout this litigation, the evidence of record failed to show Father's receipt of a lump sum from any pension or the existence of a pension. Therefore, Mother's assignment of error should not be considered by the appellate court. [5] Pa. R.App.P. 302(a) (Issues not raised in the trial court are waived and cannot be raised for the first time on appeal). *See Commonwealth v. Deible*, ___ A.3d ___ 2023, W.L. 4715187 (2023 Pa. Super.129 (7/25/23), *citing Commonwealth v. Thorne*, ___ P.A. ___, 276 A.3d 1192, 1196 (2022).

Absent an abuse of discretion, a support order shall be upheld. *Colonna*, 855 A.2d at 641. The trial court neither abused its discretion nor committed an error of law and its decisions should be upheld. *See Blue*, 616 A.2d at 631.

For these reasons, the trial court requests that the Superior Court affirm its decisions.

## 4. The Court Granted Mother's Motion for Reconsideration and Ordered that Father Pay 30% of His Support Order Toward His Arrears.

---

[5] In her first Motion for Reconsideration, Mother contends that Father has a residence worth $800,000 and a pension with Sun Life Financial worth over $500,000. Motion for Reconsideration at 2. As stated in its Reconsideration Order and this Opinion at 14-16 and at 28, the record is devoid of any documentation of the existence of these assets or their worth. Upon producing this evidence, Mother may seek relief from this court to satisfy Father's arrearages.

Mother's fourth issue reads:

> The trial court erred as a matter of law or abused its discretion when it required Father to pay only 30% of his monthly Order towards his total arrears, which currently equal $118,340.79, because with an additional payment of only $454.03 per month ($5,448.36 per year), it will take approximately **twenty-two years** for Father to pay off the arrearages that have accrued to date, at which time Father will be **81 years old.** Consequently, the funds will not be available when needed to support the minor child.

Mother's reliance on this issue is misplaced.

Mother correctly asserts that in its January 13, 2023 Decision and Final Support Order, the trial court ordered Father to pay 10% of his Final Support Order toward arrears. Final Support Order, 1/13/23 at 5-9.

In Mother's first Motion for Reconsideration filed with Domestic Relations on February 3, 2023, she argued that the trial court abused its discretion by awarding only an additional 10% payment towards the arrears exceeding $100,000. Motion for Reconsideration at 2, 4.b.[6] Mother further argued that the trial court should have awarded thirty percent (30%) additional payment towards the arrears, rather than 10%.

In its April 26, 2023 Reconsideration Order, the trial court granted Mother's request and ordered that arrears be collected at 30% of the child support order. Reconsideration Order at 5-6.

Having granted Mother's Motion that payment towards arrears be increased from 10% to 30%, Mother now asserts as error that the trial court should have increased it even more. This argument is frivolous and should not be considered.

In granting Mother's Motion for Reconsideration on April 26, 2023, the trial court considered Mother's arguments raised in her Motion and both Mother's and Father's arguments during the oral argument on her Motion for Reconsideration. It considered the amount of the

---

[6] Mother's Motion for Reconsideration is unpaginated but the trial court references the second page of her Motion.

18

arrears and the impact on Mother and child and Father's monthly net income. As a result, the trial court determined Mother's argument meritorious and granted her Motion in full regarding this issue.

The trial court contends that it granted Mother's Motion for Reconsideration in full regarding this issue and therefore this issue should not be considered. For the reasons described above, the trial court requests that the Superior Court affirm its decisions.

5. **Caselaw Clearly Provides that Father's Workers' Compensation Award, NHL Concussion Settlement and Sun Life Insurance Policy Cash-Out Was Marital Property Pursuant to Parties' Equitable Distribution Order and Cannot Be Considered as Income for Child Support Purposes.**

In her fifth issue, Mother asserts:

The trial court erred as a matter of law or abused its discretion in excluding Father's Workers' Compensation Award, National Hockey League (NHL) Concussion Settlement, and Life Insurance Cash-Out in the Court's support and APL calculations.

As with her previous issues, this issue lacks merit.

The trial court addressed this issue at length in its January 13, 2023 Decision. *See* January 13, 2023 Decision at 17-18 and 37-42. To summarize, the parties, represented by counsel, entered into an agreed property settlement agreement on the record before the Hon. Domenic Pileggi on January 24, 2019. In entering into this agreed property settlement, Mother and Father were subjected to an "extensive colloquy" on the record in court. Court Exhibit 1, E.D.Order at 1; January 13, 2023 Decision at 39. This agreed order on the record was reduced to writing by Judge Pileggi and issued as an order on February 28, 2019.

The E.D. Order, provided, in pertinent part, as the trial court explained in its Findings Fact:

1. Plaintiff received the marital home and thereafter was responsible for the mortgage, taxes, utilities and other expenses.

19

2. Plaintiff would buy out Defendant's interest in the marital home by tendering $50,000 within ten days of the Order.
3. Plaintiff would receive the contents of the house, subject to Defendant's return to the home on January 25, 2019 to remove items previously agreed were his.
4. Both parties kept their own bank accounts.
5. Defendant waived any right to any alleged distributions that might have been previously taken by Plaintiff.
6. Each party kept vehicles in their possession.
7. **Husband was awarded the Sun Life Whole Insurance policy but was responsible for the loan balance.** *Id.* **at ¶3.k**
8. **Husband was awarded "all right, title and interest in a worker's compensation claim currently pending in the State of California for pre-marital injuries received by Husband and Wife hereby waives any and all right, title and interest which she may have to that claim."** **E.D. Order at ¶3.l.**
9. **Husband was awarded "all right, title and interest which he may have to any settlement verdict, judgment or other disposition of funds awarded to him in a pending lawsuit filed by the NHL Players Association as a result of injuries sustained by players during their playing career."** *Id.* **at ¶3.m.**
10. **Husband was "awarded his NHL pension as his sole and exclusive property to the exclusion of wife who hereby waives any and all right, title and interest therein except as specified herein below."** *Id.* **at ¶3.n.**
11. **Wife was awarded "25% of the increase in value of Husband's pre-marital NHL pension with the date of marriage specified as June 29, 2001, until the date of separation specified as December 24, 2015..."** *Id.* **at ¶3.n (i).**

January 13, 2023 Decision at 39-40, (Emphasis added); Court Exhibit 1.

The trial court continued in its analysis of the E.D. Order:

Parties further waived the right to seek further equitable distribution, agreed to be responsible for their own debts (*Id.* at ¶3.o) and agreed that Defendant would pay Plaintiff $1,000 per month alimony commencing February 1, 2019 for eighteen (18) months. *Id.* at ¶4. Last, each party agreed to bear their own counsel fees. *Id.* at ¶5.

Further, the trial court determined:

> Review of the language in this agreed Order demonstrates that there must have been considerable negotiation between the parties to resolve the parties' equitable distribution claims. Of particular note is the language of the Order which incorporated the parties' agreement:

>> Husband is awarded all right, title and interest in a workmen's compensation claim currently pending in the State of California for pre-marital injuries received by Husband and Wife hereby waives any and all right, title and interest which she may have to the claim;
>> Husband is awarded all right, title and interest which he may have to any settlement, verdict, judgment or other disposition of funds awarded to him

20

in a pending lawsuit filed by the NHL Players' Association as a result of injuries sustained by players during their playing career...

January 13, 2023 Decision, quoting *Id.* at 4, ¶¶ m and n.

The trial court further determined that "while the language pertaining to Father's workmen's compensation claim references pre-martial injuries, in no way does the language in the agreed E.D. order stipulate that any funds received from this claim are entirely pre-marital pursuant to 23 Pa C.S.A. § 3501(a)(1) and thus excludible from the marital estate." January 13, 2023 Decision at 40.

Rather, the language agreed to by the parties provides that although the injuries were incurred prior to the parties' marriage, Mother has some claim to these monies. Therefore, Mother or "Wife," as she is referred to in the E.D. Order, agreed to "hereby waive any and all right, title and interest which she may have to the [workmen's compensation] claim." *Id*; E.D. Order at ¶4m.

This interpretation is bolstered by Ms. Petit's receipt of other property and funds pursuant to the E.D., showing that parties had engaged in negotiations regarding the martial estate and that she had received consideration in return for waiving her right to Mr. Petit's worker's compensation award. Indeed, Ms. Petit received the martial home valued at $619,000, eighteen months of rehabilitative alimony as well as other consideration. E.D. Order, Court Exhibit 1 at ¶¶3.a. and 4 at 2 and 5.

The trial court applied the same analysis to Father's concussion and Sun Life Insurance policy, deeming it part of the martial estate which the parties had agreed to distribute. *See* January 13, 2023 Decision at 41; E.D. Order at ¶4n, ¶3.k.

As the trial court discussed in its January 13, 2023 Decision, *Miller v. Miller*, A.783 A.2d 832 (Pa. Super. 2001) and related cases govern this situation. January 13, 2023 Decision at 38-39. Specifically, it determined:

> In *Miller*, Wife filed for modification of the child support order to seek recalculation of Husband's child support obligation as a result of proceeds he received from equitable distribution. In so arguing, Wife cited the definition of "income" contained in 23 Pa. C.S.A. §4302 and contended that these proceeds fall within that expansive definition.
>
> In considering Wife's argument, the *Miller* court first noted that the proceeds received from equitable distribution were intended to "effectuate economic justice between parties who are divorced.... and insure a fair and just determination and settlement of their property rights." 23 Pa. C.S.A. §3102; 783 A.2d at 835. (Other citations omitted).
>
> In its analysis, the Court found that it is "settled law" that income used to calculate child support cannot be considered a marital asset for equitable distribution purposes. Having drawn that conclusion, the court held the opposite is also true: money received from the sale of an asset awarded in equitable distribution cannot be included as income to calculate child support payments. The sole caveat, the court added, any gain in the sale of an asset must be included in support calculations. 783 A.2d at 835. *See also Conner v. Conner*, 217 A.3d 301, 317 (Pa. Super. 2019).

January 13, 2023 Decision at 38-39.

Accordingly, the trial court concluded:

> Like the litigants in *Miller*, in the Agreed Order, Plaintiff waived any claim to Defendant's concussion and workmen's compensation settlements or awards in return for other kinds of consideration: a marital portion of Defendant's NHL pension, the marital home and eighteen months of alimony, just to name a few. The negotiations reflected in the Order, particularly award of Father's workmen's compensation and concussion settlement to him and award of the marital home and alimony to Mother, are not "windfalls" to either party - they reflect, as the *Miller* court held, effectuation of economic justice between divorced parties and a "fair and just determination and settlement of their property rights. *Miller*, 783 A.2d at 835, citing 23 Pa. C.S.A. §3102(a) (Other citation omitted). Inclusion of these settlements in any child support calculation would constitute "double dipping" and therefore is not permissible under *Miller* and its progeny.

January 13, 2023 Decision at 42.

Accordingly, these assets, already divided between the parties to effectuate economic justice under the Divorce Code, should not be considered "income" pursuant to 23 Pa. C.S.

22

§4302. The trial court correctly excluded them from any child support and alimony pendente lite calculations. Thus, its decisions failed to constitute an abuse of discretion and should be affirmed.

### 6. The Record is Devoid of Any Other Accountable Source of Father's $49,000 Sum of Cash Which Led the Trial Court to Determine That it Was a Cash-Out of the Sun Life Insurance Policy.

Mother's sixth issue states:

The trial court erred as a matter of law or abused its discretion in failing to include in the support calculations $49,000 of available cash where Father failed to sustain his burden of proving that the funds derived from him cashing out of his life insurance.

Despite Mother's extensive discovery in this case, several hearings and a *de novo* hearing lasting about twelve hours, Mother failed to produce any evidence that any other life insurance policy existed in this matter other than the Sun Life Insurance policy referenced in the E.D. Order, which Father received pursuant to the Agreed Order. E.D. Order, ¶3.k.

Pursuant to *Miller*, discussed at length above in Issue 5 and in the trial court's January 13, 2023 Decision, as the Sun Life Insurance policy was awarded to Father in the E.D. Order, it is not includible in support and alimony pendente lite calculations. *Id.*

"[The Superior Court] will not interfere with the broad discretion afforded the trial court absent an abuse of [] discretion or insufficient evidence to sustain the support order." *Arbet v. Arbet*, 863 A.2d 34, 39 (Pa. Super. 2004) (citing *Laws v. Laws*, 758 A.2d 1226, 1228 (Pa. Super. 2000) (citations omitted).

Therefore, Mother's claim that the trial court erred in failing to include the value of Father's life insurance in the support and APL calculations has no merit. The trial court's decision fails to constitute an abuse of discretion and therefore should be affirmed.

23

## 7. Mother Failed to Establish that Father's Smart Sand Options Had Any Value Therefore the Trial Court Excluded Them from Its Support and APL Calculations.

In her Concise Statement, Mother's seventh issue alleges:

The trial court erred as a matter of law or abused its discretion in refusing to include the value of Father's SmartSand Stock as income in the child support and APL calculations where the record revealed that Father's compensation from his employer includes shares of stock.

Mother's reliance on this issue is misguided because she failed to establish that Father received any income from his SmartSand stock or options as explained below.

Child support and APL obligations are calculated by determining the parties' monthly net incomes. Pa.R.C.P. 1910-16.2. Mother correctly asserts that the record establishes that Father received stock options as compensation from his employment. She never established the value of these stock options. Father never reported receipt of the stock options as income on his tax returns; Mother failed to follow up and establish any value of these options. She could have established this value through discovery, at one of the hearings through testimony or by retention of an expert. She took none of these actions. Indeed, Father's Schedule C forms, appended to his tax returns, demonstrate a net loss from his stocks for tax years 2016-2020. *See* Exhibit P-20.

Absent any admissible evidence to show the value of the stock options and any stock, the trial court remained at a loss to include them as income to calculate child support and APL. Indeed, plucking a figure out of the void and assessing the value *sua sponte* would constitute an abuse of discretion. *See Blue*, 616 A.2d at 631 (a court commits an error of law if when reaching its conclusion, "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence of the record…").

24

As a result, the trial court requests that its decisions be affirmed.

## 8. The Trial Court's Denial of Extra-Curricular Activities Was A Proper Exercise of its Discretion and Should Be Affirmed.

Mother's eighth issue states:

The trial court erred as a matter of law or abused its discretion in refusing to award Mother reimbursement for extracurricular expenses on the grounds that Mother failed to consult with Father before signing the child up for activities, where the record revealed that Mother has 100% physical custody, Father has had no contact with the child since September 2018, and Father has never exercised his joint legal custody or expressed any desire to participate in decisions involving the child.

In response, the trial court relies on its discussion in its January 13, 2023 Decision:

> Mother also claims that Father has failed to reimburse her for child's extra-curricular activities. The Court notes that the parties' Custody Order of December 11, 2018 provides that parties share legal custody. Exhibit P-19.
>
> Legal custody is defined in 23 Pa. C.S.§5322 as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." Judge Pileggi noted that Father rarely availed himself of his partial custody in his February and May 2017 Orders. February 17, 2017 Support Order, Exhibit P-15, at 8, ¶29; May 12, 2017 Support Order, Exhibit P-7, at 8, ¶29. Moreover, Father acknowledged that he has not seen or spoken to his son since 2018. N.T. 7/25/22 at 91.
>
> Notwithstanding parties' failure to communicate and Father's failure to visit or speak with child, Father still retains legal custody. Since parties continue to share legal custody, Mother has been obliged to notify Father of her intent to enroll child in extra-curricular activities to seek his consent. Mother failed to present any evidence of her efforts to consult with Father prior to enrolling child in extra-curricular activities since 2016.
>
> The record reflects that Mother and Father have not communicated for years. Yet Mother had other options to seek Father's consent for extra-curricular activities, like sending her proposals for extra-curricular activities to Father either via text, email or even U.S. mail with a deadline to respond and a caution that she would construe his failure to respond as consent. Mother failed to exert this minimal effort to consult Father.

January 13, 2023 Decision at 46.

The trial court also notes that these extra-curricular activities have been expensive.

Exhibit P-28 outlines monies for extra-curricular activities expended by Mother. In 2018, she

25

spent $1773 for which she sought $1595.57, for 2019 she spent $2008.80 for which she sought $1647.216, activities appeared to have been suspended in 2020 due to the pandemic, and in 2021, she spent $2337.06 for which she sought $2103.35 from Father. As these costs were not modest, the court deemed it unfair to ask Father to bear 90% or more of these costs without any warning.

The trial court continued in its January 13, 2023 Decision,

> The Court appreciates how Mother believes that child should be engaged in physical activity and that child has benefitted from these activities. However, given Father's joint legal custody and Mother's failure to consult him about child's extra-curricular activities prior to enrollment, the Court declines to require Father to reimburse Mother for these extra-curricular activities, as Mother made absolutely no effort to include Father in any decision to enroll child or advise Father of child's prospective extra-curricular activities prior to his enrollment.

January 13, 2023 Decision at 46.

For these reasons, the trial court declined to award Mother extra-curricular expenses. The trial court respectfully contends that its decisions failed to constitute an abuse of discretion and its decisions should be affirmed.

## 9. The Trial Court Properly Ordered That Father Must Satisfy the Child Support and APL Arrearages Before Mother's Attorney's Fees and Costs Are Paid.

In her ninth issue, Mother states:

The trial court erred as a matter of law or abused its discretion in refusing to require Father to promptly pay 100% of Mother's attorney's fees and costs from the inception of this case as a sanction for Father's dilatory and obdurate behavior, unclean hands, and blatant contempt of court orders.

The trial court considered this issue raised in Mother's Motion for Reconsideration filed February 3, 2023. Motion for Reconsideration at 5-6. [7] The trial court's January 13, 2023 as well as its subsequent orders on Mother's two Motions for Reconsiderations make it clear that it

---

[7] Mother's Motion for Reconsideration is unpaginated.

disapproved of Father's conduct during the course of this litigation. In this decision, the trial court concluded:

> Given the large disparity between Father's reported wages to Mother and Domestic Relations over more than two years, 2016 to 2018, the Court must conclude that Father's failure to timely and accurate report his wages and to correct his stipulated wages with Mother were not advertent but willful.

January 13, 2023 Decision at 16.

Moreover, the trial court concluded that Father had mispresented his income to Domestic Relations, to Mother and to the court on multiple occasions. *Id.* at 36. Brazenly, Father then sought to hold Mother responsible for this multiple misrepresentations to the court. The trial court dismissed this attempt, noting that: "[it] defies logic for this Court to hold Mother responsible for Father's dissimulations and for this Court to permit Father to profit from his misrepresentations." *Id.* at 37. The court further noted "Father's bald-faced misrepresentation to the Court on March 4, 2021, where he denied any knowledge of the workers' compensation settlement he had entered into several weeks before. (Citations omitted). *Id.* at 27, ¶131.

However, as stated in the trial court's prior reconsideration decision, 23 Pa.C.S. § 4351 requires that "[p]ayment of support owed to the obligee **shall** have priority over [attorney's] fees, costs and expenses.". (Emphasis added). The use of the word "shall" eliminates the trial court's discretion regarding any child support arrearages. Therefore, the court simply lacks the authority to order that attorney's fees be paid before Father satisfies his child support arrearages, a total amount of $30,248.13. If it did so, it would constitute reversible error as an error of law.

The trial court also exercised reasonable discretion in this matter, requiring that Father pay Mother's APL arrearages before remitting her attorney's fees and costs.

Further, it also observed that during this litigation, through a lengthy discovery process, the trial court admitted into evidence extensive information about Father's yearly income.

27

However, Mother failed to submit any evidence regarding additional assets available to satisfy these arrears, other than those mentioned above, the workers' compensation award, the concussion settlement and the Sun Life Policy, which the trial court deemed unavailable to Mother for child support and APL. *See* above at 18-22; January 13, 2023 Decision at 37-42.

Even though the trial court ordered APL and child support be paid first before attorney's fees and costs, it understood the importance of Father fulfilling his long overdue obligations to Mother and to her attorney. It referenced Mother's ability to seek discovery of any assets which may satisfy Father's arrearages and his financial obligations towards Mother's attorney. After APL and child support were satisfied, the trial court then stated that: "[w]ith over $100,000 in child support and APL owed to Plaintiff, the Court's information gleaned from these proceedings confirmed Defendant's net yearly income available to satisfy APL and child support. It failed to provide any information about additional assets that might be available to satisfy the arrears as well as attorney's fees and costs." Reconsideration Order at 10, ¶VIII.b.

In declining to enter an order to require Father to immediately remit $40,000 in attorney's fees plus $4040.50 in costs to Mother's counsel, Rebecca Kolsky, Esquire, the court properly exercised its discretion. It placed payment of child support as a priority as required by law. Further, it reasonably exercised its discretion in requiring that Mother be paid her APL arrears after the child support arrears have been satisfied. Finally, in its Reconsideration Decision, it suggested that Mother still retained remedies to secure further payments through the discovery process by ascertaining the existence of additional assets through Domestic Relations. Without such information, the trial court deemed ordering Father to pay such a large sum immediately a doomed enterprise that may jeopardize Father's current child support payments as well as payments towards the child support and APL arrearages.

28

For these reasons, the trial court properly exercised its discretion and its decisions should be affirmed.

## CONCLUSION

For the foregoing reasons, the trial court respectfully requests that its January 13, 2023 Findings of Fact and Conclusions of Law, April 26, 2023 Order Granting Reconsideration in Part and Denying in Part and May 25, 2023 Order Granting Motion for Reconsideration be affirmed.

BY THE COURT:

_Stephanie H. Klein_
**STEPHANIE H. KLEIN, J.**

29